UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X
                                  :
UNITED STATES OF AMERICA          :
                                  :
        - v. -                    :   SUPERSEDING INDICTMENT
                                  :
LOUIS GRASSO,                     :   S4 20 Cr. 163 (PKC)
DONATO POLISENO,                  :
THOMAS GUIDO, III,                :
RICHARD BANCA, and                :
RENE ALLARD,                      :
                                  :
            Defendants.           :
                                  :
- - - - - - - - - - - - - - - - - X

**COUNT ONE**
**(Drug Adulteration and Misbranding Conspiracy)**

The Grand Jury charges:

### I. Overview of the Illicit Racehorse Doping Scheme

1. Professional horse racing is a $100 billion global industry, which draws millions of fans each year in the United States and around the world. Racehorses may sell at auction for well more than $1,000,000 and compete for purses worth millions of dollars. In the United States, the horse racing industry is subject to an array of federal and state regulations aimed at protecting participating horses and ensuring fair competition, among other things. These regulations include proscription of the use of performance-enhancing drugs ("PEDs") and testing regimes designed to ensure that racehorses are not under their influence.

2. The charges in this Indictment result from a scheme orchestrated by LOUIS GRASSO, the defendant, and others, to manufacture, distribute, and receive adulterated and misbranded PEDs and to secretly administer those PEDs to racehorses under scheme participants' control. By evading PED prohibitions and deceiving regulators and horse racing authorities, among others, participants sought to improve race performance. Over the course of the scheme, participants manufactured, purchased, sold, shipped, delivered, received, and administered at least thousands of units of PEDs issued by pharmacies pursuant to invalid prescriptions provided by veterinarians participating in the scheme, and customized PEDs created and manufactured by scheme participants intended for use on racehorses. Trainers who participated in the scheme stood to profit from the success of racehorses under their control by earning a share of their horses' winnings, and by improving their horses' racing records, thereby yielding higher trainer fees and increasing the number of racehorses under their control.

3. Federal statutes and regulations are designed, in part, to protect racehorses by ensuring that only drugs approved by the U.S. Food and Drug Administration ("FDA") and drugs administered pursuant to a valid prescription are administered to racehorses and other animals. By failing to abide by such proscriptions, racehorse trainers, veterinarians, and others imperil the health and well-being of racehorses by: (1) administering to racehorses unapproved drugs

2

whose chemical composition is unknown; (2) enabling non-veterinarians, such as racehorse trainers, to administer drugs to racehorses using methods of administration that can injure and, in extreme cases, kill the horse; and (3) masking a horse's ability to feel pain, thereby causing the horse to overexert itself during periods of intense exercise, which can lead to accidents, broken limbs, or death.

4. To avoid detection of their administration of misbranded and adulterated PEDs to racehorses, also known as "doping," the scheme participants routinely defrauded and misled government agencies, including federal and state drug regulators, various state horse racing regulators, and the betting public. Among other deceptive means, the defendants relied, in part, on their distribution and administration of customized PEDs designed and intended to be difficult or impossible to detect in anti-PED tests performed by, among others, state racing regulators, and by creating fraudulent or misleading labels for those PEDs.

## II. Legal Framework

5. At all times relevant to the Indictment, the U.S. Food and Drug Administration ("FDA") was responsible for promoting and protecting public health, including the health of animals. The FDA enforces the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, et seq. ("FDCA"), which, among other things, governs the manufacture and distribution of drugs, including prescription drugs, for humans

3

and animals.

6. Pursuant to the FDCA and related regulations, a drug may be deemed "misbranded" or "adulterated" for several reasons, including: (1) if a drug does not have requisite approvals from the FDA for use in an animal; (2) if a drug requiring a prescription is administered without a valid prescription, that is, not in the usual course of a veterinarian's professional practice, or not administered pursuant to any prescription at all; (3) if a drug's label is deficient in various specified respects, for example, if it is false or misleading or does not accurately list details regarding the manufacturer, packer, or distributor, the contents of the packaging, or directions for use; or (4) if the facility that manufactures the drug is not duly registered by the FDA.

### III. Relevant Adulterated and Misbranded PEDs

7. During the course of the scheme, LOUIS GRASSO, DONATO POLISENO, THOMAS GUIDO, III, RICHARD BANCA, and RENE ALLARD, the defendants, manufactured, distributed, and administered the following adulterated and misbranded PEDs to improve the race performance of horses in their or others' care, which the defendants referred to by various names set forth below:

a. Erythropoietin and analogues: Commonly referred to by participants in the horse racing industry, generally, by the brand name "Epogen," or by the shorthand "epo," erythropoietin is used to boost a racehorse's red blood cell count in order to stimulate

4

endurance during a race and improve race recovery. Similar "blood building" substances are commonly referred to using various trade names, including Retacrit and Aranesp. Among other things, "blood builders," when combined with intense physical exertion, thicken the racehorse's blood, thereby causing increased cardiac exertion and pressure, which can lead to cardiac issues or death.

    b. Customized Analgesics: Referred to by the defendants as "pain shots" or "joint blocks," customized analgesics contain various pain-relieving substances, including snake venom, used to deaden a horse's nerves and block pain. Among other things, customized analgesics mask physical injuries in a racehorse, which can cause a racehorse to overexert itself during periods of intense physical exercise, and thereby sustain a leg fracture or break during a race. Oftentimes, racehorses that sustain leg fractures or breaks are euthanized.

    c. Bronchodilators: Referred to by the defendants as "Bronk," or "breather" drugs, these customized bronchodilators are designed to increase a horse's oxygen intake. Among other things, bronchodilators lessen fatigue, which cause the racehorse to perform beyond its natural abilities, thereby increasing the risk of injury while racing, as described above.

    d. "Red acid": "Red acid" is a term used by the defendants to refer generally to customized PEDs designed, in part, to reduce inflammation in joints, thereby improving a horse's race

5

performance. Similar to customized analgesics, "red acid," among other things, is administered to mask physical injuries in racehorses, thereby increasing the risk of injury while racing.

8. In relevant part, prescription drugs approved by the FDA, such as Epogen, Retacrit, and Aranesp, are misbranded when dispensed without a valid prescription. Customized PEDs created by LOUIS GRASSO, the defendant, such as "pain shots," "joint blocks," "Bronk," "bleeder," "breather," and "red acid," among others, are adulterated and misbranded because they: (1) are dispensed without a valid prescription; (2) are new animal drugs not approved by the FDA for use in animals; (3) lack adequate labeling; and/or (4) are manufactured in a facility lacking requisite FDA registration.

### IV. Offense Conduct

9. From at least 2017, through at least February 2020, LOUIS GRASSO, the defendant, was a veterinarian licensed in New York and New Jersey, who supplied adulterated and misbranded PEDs to horse trainers across the United States, including in New York State. GRASSO created, manufactured, distributed, and sold customized PEDs. Neither GRASSO nor any facility with which he was associated was registered with the FDA to manufacture drugs, nor were any of the drugs he customized approved by the FDA for use in animals. Those adulterated and mislabeled PEDs included snake venom, sulker, a "pain shot," "Bronk," and "Red Acid," among other drugs. GRASSO also advised others on how to administer the various adulterated and

6

misbranded PEDs he produced and sold.

10. At all times relevant to this Indictment, DONATO POLISENO, the defendant, was the owner of a veterinary supply business located in Delaware ("Firm-1"), who purchased and distributed PEDs from GRASSO directly and improperly used GRASSO's veterinary license to obtain PEDs. In or about 2019, POLISENO recruited GRASSO for the purpose of using GRASSO's veterinary license, and his ability to order certain chemicals and PED components using that license, to obtain the same for purposes of creating Firm-1's misbranded and adulterated PEDs. POLISENO included a Firm-1 product list in a shipment of PEDs sold by POLISENO to a confidential source working at the direction of law enforcement ("CS-1"), which list included dozens of misbranded and adulterated PEDs, including adrenal stimulants, sedatives, and others, some listed at hundreds of dollars per unit.

11. At all times relevant to this Indictment, THOMAS GUIDO, III, RICHARD BANCA, and RENE ALLARD, the defendants, were racehorse trainers, each of whom obtained adulterated and misbranded PEDs from defendant LOUIS GRASSO and administered those PEDs, or caused them to be administered, to racehorses.

12. To avoid detection of their administration of misbranded and adulterated PEDs, LOUIS GRASSO, DONATO POLISENO, THOMAS GUIDO, III, RICHARD BANCA, and RENE ALLARD, the defendants, and others working with them or at their direction, routinely

7

attempted to deceive and mislead government agencies, including federal and state drug and horseracing regulators, pharmacies, and the betting public. These defendants used false prescription information when submitting prescriptions for blood building PEDs to various pharmacies, in an effort to avoid scrutiny by those pharmacies and/or regulators and law enforcement officials investigating their use of misbranded and adulterated PEDs. Often the co-conspirators submitted or directed others to submit prescriptions to pharmacies under the names and patient files of purported canine patients, in order to disguise the fact that the PEDs, including Epogen and other prescription blood builders, were in fact being obtained for illicit administration to racehorses. In 2019 alone, GRASSO submitted such false prescription information for drugs containing erythropoietin at over ten different pharmacies in at least seven states.

**Statutory Allegations**

13. From at least in or about 2015 through at least in or about January 2020, in the Southern District of New York and elsewhere, LOUIS GRASSO, DONATO POLISENO, THOMAS GUIDO, III, RICHARD BANCA, and RENE ALLARD, the defendants, together with others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, violations of Title 21, United States Code, Sections 331 and 333.

8

14. It was a part and an object of the conspiracy that LOUIS GRASSO, DONATO POLISENO, THOMAS GUIDO, III, RICHARD BANCA, and RENE ALLARD, the defendants, together with others known and unknown, with the intent to defraud and mislead, would and did introduce and deliver for introduction, and would and did cause the introduction and delivery for introduction, into interstate commerce, of adulterated and misbranded drugs, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, in violation of 21 U.S.C. §§ 331(a) and 333(a)(2).

15. It was further a part and an object of the conspiracy that LOUIS GRASSO, DONATO POLISENO, THOMAS GUIDO, III, RICHARD BANCA, and RENE ALLARD, the defendants, together with others known and unknown, with the intent to defraud and mislead, in interstate commerce, would and did adulterate and misbrand drugs, and would and did cause the adulteration and misbranding of drugs in interstate commerce, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, in violation of 21 U.S.C. §§ 331(b) and 333(a)(2).

16. It was further a part and an object of the conspiracy that LOUIS GRASSO, DONATO POLISENO, THOMAS GUIDO, III, RICHARD BANCA, and RENE ALLARD, the defendants, together with others known and unknown, with the intent to defraud and mislead, would and did receive in interstate commerce adulterated and misbranded drugs, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f),

9

and 360b, and deliver and proffer delivery thereof for pay and otherwise, and would and did cause the receipt in interstate commerce of adulterated and misbranded drugs, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, and cause the delivery and proffered delivery thereof for pay and otherwise, in violation of 21 U.S.C. §§ 331(c) and 333(a)(2).

17. It was further a part and an object of the conspiracy that LOUIS GRASSO, DONATO POLISENO, THOMAS GUIDO, III, RICHARD BANCA, and RENE ALLARD, the defendants, together with others known and unknown, with the intent to defraud and mislead, would and did alter, mutilate, destroy, obliterate, and remove the whole or any part of the labeling of, and do any other act with respect to, a food, drug, device, tobacco product, or cosmetic, while such article was held for sale (whether or not the first sale) after shipment in interstate commerce that results in such article being adulterated or misbranded, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, in violation of 21 U.S.C. §§ 331(k) and 333(a)(2).

**Overt Acts**

18. In furtherance of the conspiracy and to effect the illegal objects thereof, LOUIS GRASSO, DONATO POLISENO, THOMAS GUIDO, III, RICHARD BANCA, and RENE ALLARD, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. In or about September 2017, ALLARD caused a prescription to be filled at a pharmacy located in Texas using an invalidly obtained veterinary license, with the aim of receiving and using that prescription medication without a valid medical prescription at a racehorse training facility located in the Southern District of New York.

b. On about October 2, 2019, GRASSO counseled GUIDO on the proper administration of misbranded and adulterated PEDs, and specifically discussed the death of a horse that GUIDO was training and stated the horse had been doped with a PED, of a type similar to a "bleeder," of a kind GRASSO provided to GUIDO, used to reduce bleeding in a horse's lungs during periods of exertion, noting, "it happens," that the deceased horse's trainer had "probably over juiced him," and that the suspected cause of the horse's death was not unusual: "I've seen that happen 20 times."

c. On or about October 8, 2019, ALLARD sent GRASSO a text message, stating: "I will need 3 bottles of Red Acid to go to Canada Thursday."

d. On or about October 11, 2019, on a telephone call with POLISENO, GRASSO offered POLISENO a copy of GRASSO's veterinary license and related licensing information for POLISENO's use in ordering components for the creation and sale of misbranded and adulterated PEDs.

e. On or about November 1, 2019, POLISENO arranged

11

with GRASSO to order PED components using GRASSO's name and licensing information, and to ship the drugs to GRASSO, for a later transfer to POLISENO.

  f. On or about October 17, 2019, GRASSO reiterated to Conor Flynn, BANCA's assistant trainer, his willingness to provide prescriptions without verifying medical necessity, advising Flynn that his fee was "$100 per script," regardless of the prescription: "I don't give the fuck what it is."

  g. On or about October 21 and 24, 2019, GUIDO, who had previously discussed his role as a racehorse trainer with GRASSO, requested that GRASSO provide a prescription for 4,000 units of "epo." GRASSO thereafter confirmed that he had requested the prescription as GUIDO had requested.

  h. On or about October 23, 2019, CS-1, who purported to be a horse trainer, ordered multiple customized, misbranded, and adulterated PEDs from POLISENO (the "Ordered PEDs").

  i. On or about October 26, 2019, POLISENO caused to be delivered to CS-1 a package that contained multiple bottles of the Ordered PEDs and an invoice issued by Firm-1. Photographs of these substances, as sold and shipped to CS-1 by POLISENO, follow:

12

 

j. On or about October 23, 2019, GRASSO discussed with CS-1 CS-1's desire to purchase misbranded and adulterated drugs, and to obtain an illegal prescription for Epogen, and advised CS-1 that GRASSO would provide "a script [*i.e.*, a prescription] for anything."

k. On or about October 23, 2019, GRASSO agreed, at Flynn's request, to provide Flynn with pre-printed labels to be applied to otherwise unlabeled bottles of PEDs.

l. On or about October 24, 2019, GRASSO shipped from Pine Bush, New York, to CS-1 in New Jersey, a package of PEDs, including snake venom and "Bronk," along with a false prescription made out by GRASSO for a non-existent dog named "Butch." Photographs of the snake venom, as sold and shipped to CS-1 by GRASSO, follow:

13



m. On or about October 25, 2019, GRASSO and BANCA exchanged text messages regarding payment for products that GRASSO had supplied to BANCA and Flynn.

n. On or about December 9, 2019, POLISENO, on a call with CS-1, advised CS-1 regarding the administration of POLISENO's misbranded and adulterated PEDs, explaining that CS-1 should "blast them" six hours before the race started.

o. On or about November 1, 2019, ALLARD and GRASSO discussed, in substance and in part, ALLARD administering Red Acid and another substance to a horse.

p. On or about December 9, 2019, GRASSO shipped, from the Southern District of New York, multiple PEDs, including a bronchodilator ("Bronk"), analgesics (unlabeled), a bleeder ("Cauterize"), and red acid (unlabeled), to a confidential source in New Jersey. A photograph of that shipment, as received by the confidential source, appears below:



(Title 18, United States Code, Section 371.)

**FORFEITURE ALLEGATIONS**

19. As a result of committing the offense alleged in Count One of this Indictment, LOUIS GRASSO, DONATO POLISENO, THOMAS GUIDO, III, RICHARD BANCA, and RENE ALLARD, the defendants, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 334 and Title 28, United States Code, Section 2461, any and all drugs that were adulterated or misbranded when

15

introduced into or while in interstate commerce or while held for sale (whether or not the first sale) after shipment in interstate commerce, or which may not, under the provisions of section 331(11), 344, or 355 of this title, have been introduced into interstate commerce, including but not limited to a sum of money in United States currency representing the value of such property.

### Substitute Asset Provision

20. If any of the above described forfeitable property, as a result of any act or omission of the defendant:

    a. Cannot be located upon the exercise of due diligence;

    b. Has been transferred or sold to, or deposited with, a third person;

    c. Has been placed beyond the jurisdiction of the Court;

    d. Has been substantially diminished in value; or

    e. Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

(Title 21, United States Code, Sections 334 and 853, and Title 28, United States Code, Section 2461(c).)

_____
FOREPERSON

_____ /S SH
AUDREY STRAUSS
Acting United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

LOUIS GRASSO, DONATO POLISENO, THOMAS GUIDO, III, RICHARD BANCA, RENE ALLARD,

Defendants.

## SUPERSEDING INDICTMENT

S4 20 Cr. 163

(18 U.S.C. § 371.)

AUDREY STRAUSS
Acting United States Attorney.

**A TRUE BILL**

*/s/ Craig Mitchell*
Foreperson.

12/03/20
(CA)

Superseding Indictment Filed

KN Parker
USMJ